United States District Court
Southern District of Texas
**ENTERED**
August 20, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHG HOSPITAL HOUSTON LLC d/b/a CORNERSTONE SPECIALTY HOSPITALS BELLAIRE, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-20-0718 |
| BLUE CROSS BLUE SHIELD OF TEXAS, A DIVISION OF HEALTH CARE SERVICE CORPORATION, | § § § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff CHG Hospital Houston LLC d/b/a Cornerstone Specialty Hospitals Bellaire ("Plaintiff") sued defendant Blue Cross Blue Shield of Texas, a Division of Health Care Service Corporation ("Defendant") in the 270th District Court of Harris County, Texas.[1] Defendant timely removed the action to this court.[2] Pending before the court is Defendant's Motion to Compel Arbitration (Docket Entry No. 14). For the reasons explained below, Defendant's Motion to Compel Arbitration will be granted.

---

[1] Plaintiff's Original Petition and Request for Disclosure ("Original Petition"), Exhibit C to Defendant's Notice of Removal ("Notice of Removal"), Docket Entry No. 1-3, p. 5. All page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

[2] Notice of Removal, Docket Entry No. 1, p. 1.

## I. Factual and Procedural Background

Plaintiff is a hospital participating in Defendant's HMO insurance network. The parties' relationship is embodied in their Hospital Agreement for HMO Network Participation ("the Agreement"), made effective on April 1, 2014.[3] The Agreement contains provisions requiring alternative dispute resolution including mediation and binding arbitration ("the Arbitration Clause").[4] The Arbitration Clause states:

> **I. Dispute Resolution.** . . . In order to avoid the cost and time consuming nature of litigation, any dispute between HMO Blue and Hospital arising out of, relating to, involving the interpretation of, or in any other way pertaining to this Agreement or any prior Agreement between HMO Blue and Hospital shall be resolved using alternative dispute resolution mechanisms instead of litigation. HMO Blue and Hospital agree and acknowledge that it is their mutual intention that this provision be construed broadly so as to provide for mediation and/or arbitration of all disputes arising out of their relationship as third-party Payer and Hospital. The parties further agree that resolution of any dispute pursuant to this Agreement shall be in accordance with the procedures detailed below. . . .[5]
>
> **3. Binding Arbitration.** In the event mediation is not successful in resolving the dispute, either HMO Blue or Hospital may submit the dispute to final and binding arbitration under the commercial rules and regulations of

---

[3] Agreement, Exhibit A-1 to Defendant's Motion to Compel Arbitration, Docket Entry No. 14-1, p. 6.

[4] Id. at 19 Part X Section I.

[5] Id.

the American Health Lawyers Association[.] . . .[6]

f.  Hospital acknowledges that this arbitration provision precludes Hospital from filing an action at law or in equity and from having any dispute covered by this Agreement resolved by a judge or a jury. . . .[7]

Plaintiff admitted and treated a patient ("the Insured") from March 30, 2017, to August 27, 2018.[8] Defendant confirmed that the Insured was covered by his policy with Defendant and pre-authorized his admission.[9] The Insured was incapacitated and had no family members in the country to assist him.[10] During his long admission, Plaintiff paid the Insured's insurance premiums to prevent a lapse in his coverage.[11] Defendant accepted the payments and confirmed coverage on June 14, 2017.[12]

On February 13, 2018, however, Defendant advised Plaintiff that coverage had terminated on May 31, 2017.[13] Defendant contends that Plaintiff, a healthcare provider, was not permitted to pay the Insured's premiums under the terms of his policy and Defendant's

---

[6] Id. at 20 Part X Section I(3).

[7] Id. at 20 Part X Section I(3)(f).

[8] Original Petition, Exhibit C to Defendant's Notice of Removal ("Notice of Removal"), Docket Entry No. 1-3, p. 7 ¶ 10.

[9] Id.

[10] Id. at 7 ¶ 12.

[11] Id.

[12] Id. at 7 ¶¶ 12-13

[13] Id. at 7-8 ¶ 14.

Provider Manual.[14] Defendant returned the premium payments that Plaintiff had submitted and began denying claims for the Insured and recouping money paid for services provided after the termination of coverage.[15] Plaintiff alleges that Defendant has accordingly underpaid Plaintiff for the Insured's expenses by more than $574,000.[16]

On January 27, 2020, Plaintiff filed its Original Petition in state court asserting claims of negligent misrepresentation, promissory estoppel, breach of contract, and violations of the Texas Insurance Code, and seeking a declaratory judgment.[17] Defendant removed the action to this court on the basis of diversity jurisdiction on February 28, 2020.[18] On April 8, 2020, Defendant filed its Motion to Compel Arbitration contending that this action must be dismissed because an enforceable arbitration

---

[14] See Blue Essentials, Blue Advantage HMO and Blue Premier Provider Manual - Roles and Responsibilities, Exhibit A-2 to Defendant's Motion to Compel Arbitration, Docket Entry No. 14-1, p. 64; Letter Regarding Cornerstone Specialty Hospitals Bellaire Dated November 25, 2019, Exhibit A-4 to Defendant's Motion to Compel Arbitration, Docket Entry No. 14-1, pp. 69-71.

[15] Original Petition, Exhibit C to Defendant's Notice of Removal ("Notice of Removal"), Docket Entry No. 1-3, pp. 7-8 ¶ 14, 8 ¶ 15.

[16] Id. at 8 ¶ 17.

[17] Original Petition, Exhibit C to Defendant's Notice of Removal, Docket Entry No. 1-3, pp. 5, 8-13

[18] Notice of Removal, Docket Entry No. 1, pp. 1-2.

agreement exists between the parties.[19] Plaintiff responded on April 28, 2020,[20] and Defendant replied on May 15, 2020.[21] Plaintiff filed a sur-reply on May 19, 2020.[22]

## II. Legal Standard

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, et seq., creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 103 S. Ct. 927, 941 (1983). "[W]hen a court interprets [] provisions in an agreement covered by the FAA, 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.'" Mastrobuono v. Shearson Lehman Hutton, Inc., 115 S. Ct. 1212, 1218 (1995) (quoting Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University, 109 S. Ct. 1248, 1254 (1989)).

Section 2 of the FAA states that a written arbitration

---

[19]Defendant's Motion to Compel Arbitration, Docket Entry No. 14, pp. 1-2.

[20]Plaintiff's Response in Opposition to Defendant's Motion to Compel Arbitration ("Plaintiff's Response"), Docket Entry No. 15.

[21]Defendant's Reply in Support of Its Motion to Compel Arbitration ("Defendant's Reply"), Docket Entry No. 20.

[22]Plaintiff's Sur-Reply to Defendant's Reply in Support of Its Motion to Compel Arbitration ("Plaintiff's Sur-Reply"), Docket Entry No. 23.

agreement in any contract involving interstate commerce is valid, irrevocable, and enforceable except on grounds that would permit the revocation of a contract in law or equity. 9 U.S.C. § 2. Section 3 of the FAA requires federal courts, on a party's motion, to stay litigation of claims subject to arbitration. 9 U.S.C. § 3. Section 4 of the FAA permits a party to seek an order compelling arbitration if the other party has failed to arbitrate under a written agreement. 9 U.S.C. § 4. Courts apply a two-step inquiry when ruling on a motion to compel arbitration. Edwards v. Doordash, Inc., 888 F.3d 738, 743 (5th Cir. 2018). "First, the court asks whether there is a valid agreement to arbitrate and, second, whether the current dispute falls within the scope of a valid agreement." Id. If the party seeking arbitration argues that there is a delegation clause, however, "the only question, after a finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause." Kubala v. Supreme Production Services, Inc., 830 F.3d 199, 202 (5th Cir. 2016). "If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases." Id.

### III. **Analysis**

Plaintiff does not dispute the existence of the Agreement or the validity of the Arbitration Clause. Plaintiff argues (1) that its claims do not fall within the scope of the Arbitration Clause in the Agreement and (2) that the FAA does not apply where it would

impair claims based on state insurance law.[23] Defendant argues that the court may not decide whether the action falls within the scope of the Arbitration Clause because it incorporates the Commercial Rules of the American Health Lawyers Association ("AHLA Rules"), which provide that the arbitrator should decide that issue.[24]

**A.    The FAA May Apply to Plaintiff's Texas Insurance Code Claim**

Plaintiff contends that enforcement of the Arbitration Clause as to its Texas Insurance Code claim under the FAA would violate 15 U.S.C. § 1012.  Under that statute, "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance."  15 U.S.C. § 1012.  Plaintiff argues that the application of the FAA to compel arbitration would impair § 541.152 of the Texas Insurance Code's provision for a successful plaintiff's recovery of attorney's fees because the Arbitration Clause prohibits an award of attorney's fees.[25]

This argument lacks merit because the Arbitration Clause does not prohibit all awards of attorney's fees.  The provision cited by Plaintiff states:  "The costs of arbitration, including the arbitrator's fee and any reporting or other costs, but excluding

---

[23]Plaintiff's Response, Docket Entry No. 15, pp. 7-8.

[24]Defendant's Reply, Docket Entry No. 20, p. 5.

[25]Plaintiff's Response, Docket Entry No. 15, pp. 17-18.

lawyers', consultants' and witness fees, shall be borne by the non-prevailing party unless the arbitrator determines as part of the award that such allocation is inequitable under the totality of the circumstances."[26] The plain language of this provision merely assigns the "costs of arbitration" to the non-prevailing party and states that attorney's fees are not among those costs. This provision does not prohibit the arbitrator from awarding attorney's fees when a party prevails on a claim that entitles them to such an award, such as under § 541.152.

Moreover, the Agreement contains a severability clause that states that "[i]f for any reason any provision of this Agreement is held invalid, the remaining provisions shall remain in full force and effect."[27] An arbitration agreement that waives statutory substantive rights and remedies is generally unenforceable. See In re Poly-America, L.P., 262 S.W.3d 337, 349 (Tex. 2008). If the Arbitration Clause's provision for costs prevents recovery of attorney's fees under § 541.152 of the Texas Insurance Code, it could be severed from the Agreement. See Venture Cotton Co-op v. Freeman, 435 S.W.3d 222, 229-230 (Tex. 2014) (holding that an arbitration agreement's waiver of substantive rights was unenforceable but severable); Parrot v. D.C.G., Inc., Civil Action No. 3:19-CV-1718-N, 2020 WL 1876096, at *4-5 (N.D. Tex. Apr. 14,

---

[26]Agreement, Exhibit A-1 to Defendant's Motion to Compel Arbitration, Docket Entry No. 14-1, p. 20 Part X Section I(3)(d).

[27]Id. at 21 Part P.

2020) (severing an arbitration agreement's attorney's fees provision that contravened a statutory attorney's fees remedy but otherwise enforcing it). Enforcement of the Arbitration Clause under the FAA therefore does not require the enforcement of provisions contrary to the Texas Insurance Code. The court concludes that enforcement of the Arbitration Clause under the FAA would not "supersede, invalidate, or impair" Plaintiff's right to attorney's fees under § 541.152, and accordingly 15 U.S.C. § 1012 does not apply.

**B.  The Agreement Delegates the Scope of Arbitration to the Arbitrator**

Plaintiff argues that its claims are not within the scope of the Arbitration Clause. The court may only consider Plaintiff's arguments as to the scope of the Arbitration Clause if the parties have not delegated the issue to an arbitrator. The Supreme Court has explained that there are three types of disagreements in the arbitration context: (1) the merits of the dispute; (2) whether the merits are arbitrable; and (3) who decides the second question. First Options of Chicago, Inc. v. Kaplan, 115 S. Ct. 1920, 1923 (1995). The third question turns on what the parties have agreed to. Id. The court decides arbitrability unless the parties have "clearly and unmistakably" agreed to submit it to the arbitrator. Crawford Professional Drugs, Inc. v. CVS Caremark Corp., 748 F.3d 249, 262 (5th Cir. 2014). An agreement may demonstrate the

parties' intent to delegate arbitrability if it incorporates by reference a body of arbitral rules that authorize the arbitrator to decide issues of the arbitration agreement's existence, scope, or validity. Petrofac, Inc. v. DynMcDermott Petroleum Operations Co., 687 F.3d 671, 675 (5th Cir. 2012). Whether such a reference clearly and unmistakably shows an intent to delegate the issue depends on the language of the contract. Archer and White Sales, Inc. v. Henry Schein, Inc., 935 F.3d 274, 281-82 (5th Cir. 2019).

There is no dispute that the Agreement incorporates the AHLA Rules by reference and that those rules authorize the arbitrator to determine whether the claims asserted by the parties fall under the arbitration agreement.[28] Plaintiff argues, however, that an agreement's incorporation of arbitral rules by reference only shows clear and unmistakable intent to delegate the issue if all possible disputes are governed by the arbitration agreement.[29] Plaintiff contends that the Agreement's incorporation of the AHLA Rules does not conclusively show an intent to delegate arbitrability because the Agreement excepts certain disputes and issues from the Arbitration Clause.[30]

In Archer and White, the Fifth Circuit stated that an

---

[28] Defendant's Reply, Docket Entry No. 20, p. 7; see Plaintiff's Sur-Reply, Docket Entry No. 23, pp. 1-5 (challenging neither the substance nor applicability of the AHLA Rules).

[29] Plaintiff's Sur-Reply, Docket Entry No. 23, p. 2.

[30] Id. at 4.

agreement that exempts certain disputes from arbitration does not clearly and unmistakably delegate arbitrability to the arbitrator for disputes that fall within the exception. 935 F.3d at 281-82. The arbitrability of disputes that do not fall within the exception, however, are still delegated. Id.

The Arbitration Clause states that it applies to "any dispute," the only exceptions being (1) legal proceedings brought by third parties against either Plaintiff or Defendant, (2) the rate of compensation payable under the Agreement, and (3) the termination of the Agreement.[31] None of these exceptions apply. This action was brought by Plaintiff against Defendant, and there is no dispute as to the rate of compensation or a termination of the Agreement. Accordingly, the Agreement's incorporation of the AHLA Rules shows the parties' clear and unmistakable intent to delegate arbitrability of the disputes in this action.

Plaintiff also cites decisions by Texas appellate courts as authority for its argument that the dispute need not fall within an exception.[32] But these decisions are distinguishable because they turn on the specific language of the arbitral agreement at issue. In Lucchese Boot Co. v. Solano, 473 S.W.3d 404, 414 (Tex. App.-El Paso 2015, no pet.), the court concluded that incorporation of rules by reference that delegated arbitrability

---

[31]Agreement, Exhibit A-1 to Defendant's Motion to Compel Arbitration, Docket Entry No. 14-1, p. 19 Part X Section I, p. 20 Part X Section I(4).

[32]Plaintiff's Sur-Reply, Docket Entry No 23, pp. 3-4.

did not control where "the agreement's plain language purport[ed] to restrict the arbitrator's power to hear only certain classes of disputes." The agreement in <u>Lucchese</u> did not assign all disputes to arbitration subject to exceptions; it listed specific disputes subject to arbitration. <u>Id.</u> at 410-411. In this action, however, the parties' Arbitration Clause states that "any dispute . . . shall be resolved using alternative dispute resolution mechanisms instead of litigation" and that "this arbitration provision precludes Hospital from filing an action at law or in equity and from having any dispute covered by this Agreement" before listing a narrow set of exceptions.[33] <u>Lucchese</u>'s holding involving a narrow arbitration agreement is therefore not applicable. <u>Burlington Resources Oil & Gas Co. LP v. San Juan Basin Royalty Trust</u>, 249 S.W.3d 34, 41 (Tex. App.-Houston [1st Dist.] 2007, pet. denied), is distinguishable for the same reason.

In <u>Haddock v. Quinn,</u> 287 S.W.3d 158, 174-75 (Tex. App.-Fort Worth 2009, pet. denied), the arbitration agreement prescribed in detail the procedure and scope of arbitration and only incorporated external arbitral rules "to the extent not inconsistent" with its provisions. The arbitration agreement was also executed before the relevant arbitral rules contained a rule that delegated arbitrability. <u>Id.</u> at 175. And in <u>BossCorp, Inc. v. Donegal, Inc.,</u> 370 S.W.3d 68, 76 (Tex. App.-Houston [14th Dist.] 2012, no

---

[33]Agreement, Exhibit A-1 to Defendant's Motion to Compel Arbitration, Docket Entry No. 14-1, p. 19 Part X Section I, p. 20 Part X Sections I(3)(f), I(4).

pet.), the dispute before the court fell within exceptions to the arbitration agreement.

Moreover, to the extent that these decisions may contradict Fifth Circuit precedent, the court must follow Fifth Circuit precedent. The court is bound by Archer and White, under which disputes not subject to an exception in an arbitration clause are clearly and unmistakably delegated if the agreement incorporates of arbitral rules providing such. The court concludes that the Agreement demonstrates the parties' clear and unmistakable intent to submit the arbitrability of disputes in this action to an arbitrator. The court must therefore enforce the arbitration agreement so that an arbitrator may decide whether Plaintiff's claims fall within the scope of the Arbitration Clause.

### C. The Court Will Dismiss the Action

For the reasons explained above, the court concludes that Defendant may enforce the arbitration agreement and compel arbitration of Plaintiff's claims so that an arbitrator may at least decide the scope of the arbitration agreement. When all issues before the court must be submitted to an arbitrator, the court has discretion to dismiss the action. Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992). Plaintiff argues that the court should stay rather than dismiss the action because dismissal is only appropriate if all claims are

arbitrable.[34] Because the court has concluded that the Agreement requires an arbitrator to determine the arbitrability of all of Plaintiff's claims, the court will dismiss the action without prejudice.

## IV. Conclusion and Order

For the reasons explained above, the court concludes that an agreement to arbitrate claims between the parties exists and that the parties have delegated the issue of whether the claims fall under the scope of the arbitration clause to an arbitrator. Accordingly, Defendant's Motion to Compel Arbitration (Docket Entry No. 14) is **GRANTED**, and this action will be dismissed without prejudice.

**SIGNED** at Houston, Texas, on this the 20th day of August, 2020.

```
                            _____
                                    SIM LAKE
                       SENIOR UNITED STATES DISTRICT JUDGE
```

---

[34]Plaintiff's Response, Docket Entry No. 15, p. 18.